Gabrielli, J.
(dissenting). I respectfully dissent and vote to *839 modify the order of the Appellate Division only to the extent of remitting the matter to Supreme Court, New York County, for further proceedings to determine the appropriate measure of restitution to defrauded consumers.
This is a proceeding brought by the Attorney-General pursuant to subdivision 12 of section 63 of the Executive Law.* That section authorizes the Attorney-General to seek injunctive relief and restitution for injured parties whenever "any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business”. This remedial legislation is designed to provide protection for the consumer, as is evidenced by the considerable reach of the statute. Thus, the terms "fraud” and "fraudulent” are defined very broadly to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions”. Similarly, the words "persistent fraud” or "illegality” as used in the statute require only that there be a "continuance or carrying on of any fraudulent or illegal act or conduct”.
In the instant proceeding, the Attorney-General contends, and the courts below found, that General Motors disseminated advertising likely to mislead potential consumers into believing that automobiles manufactured by the various divisions of General Motors contained motors especially designed and produced by or for the particular division which placed its label on the car, although in fact General Motors regularly placed engines manufactured and designed by one division into cars produced by its other divisions. In support of these accusations, the Attorney-General submitted documentary evidence both of General Motors’ advertising practices and of the fact that numerous consumers were actually deceived by these advertisements. On the basis of this unassailed proof, and *840 without any evidentiary hearing, Supreme Court concluded that General Motors had indeed engaged in conduct of the type proscribed by subdivision 12 of section 63. The court then awarded both injunctive relief and "restitution” in the form of extended warranties and cash rebates for consumers who had unknowingly purchased 1977 Cadillac Sevilles, Oldsmobiles, Buicks and Pontiacs containing engines produced by another division of General Motors. The Appellate Division affirmed this determination, and General Motors now appeals to this court.
It is beyond dispute and in fact uncontested that General Motors did indeed engage in the practice of engine switching without notice to automobile purchasers. Additionally, General Motors concedes that the advertising samples submitted by the Attorney-General were in fact disseminated by General Motors. The question presented on this appeal is whether the Supreme Court was justified in concluding that General Motors had engaged in forbidden conduct and in making the award described above on the basis of the documentary evidence presented to that court, or whether an evidentiary hearing was necessary. For the reasons discussed below, I would sustain the finding that General Motors engaged in false and misleading advertising, but would remand for further proceedings to determine the appropriate measure of restitution.
Initially, I note my agreement with the principle stated by Mr. Justice Samuel J. Silverman in his dissenting memorandum below (63 AD2d 885,. 885-886), and presumably adopted by the majority of this court today, that in a proceeding of this sort the Attorney-General need not prove that any consumer was in fact deceived by the forbidden practices. Rather, injunctive relief, at least, is authorized by the Executive Law (§ 63, subd 12) upon a showing that a particular advertisement may convey a false impression to the consumer. Moreover, as we stated in Guggenheimer v Ginzburg (43 NY2d 268, 273): "In weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard — including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions”. Although we were speaking of a different statute in that case, the principle and sentiments expressed *841 therein are equally applicable to other consumer protection legislation such as subdivision 12 of section 63 of the Executive Law. So viewed, I find that the advertising used by General Motors was indeed sufficiently deceptive as a matter of law to warrant relief pursuant to subdivision 12 of section 63 of the Executive Law.
Normally, of course, the question whether certain advertising is deceptive will be a question of fact best determined following an evidentiary hearing. In certain cases, however, such as this, the deceptive nature of an advertisement is so painfully obvious that it can be deemed such as a matter of law. Illustrative of the objectionable advertising disseminated by General Motors is an Oldsmobile advertisement which stated in pertinent part: "If you’re getting the feeling that we’ve built an Olds that’s right for your needs and your lifestyle, you’re getting the idea. Take a few minutes now to read through this brochure and see how Olds’ styling, features and engineering have helped shape the Olds that’s just right for you”. Appearing adjacent to this ode to the Oldsmobile is a picture of a 231 V6 engine which is available in several Oldsmobile models. It appears clear that even the average consumer, not to mention "the ignorant, the unthinking and the credulous”, would assume this to be an Oldsmobile engine. In fact, however, Buick is the only division of General Motors which manufactures a V6 engine, and thus any purchasers of an Oldsmobile with a V6 actually received a Buick engine.
Even more devastating to General Motors’ claims that a consumer could not be lead to believe from its advertisements that the automobiles produced by each division contained motors manufactured by or especially for that division, is General Motors’ 1977 Buick Buyer’s Guide. That helpful pamphlet contains a section entitled "Buick Engines”. Reference is made therein to an assortment of V8 engines available in Buicks. Many of those engines, however, rather than being Buick engines, were in fact manufactured by Pontiac or Oldsmobile. Unlike a majority of this court, I have little difficulty in concluding as a matter of law that an advertisement which describes Oldsmobile and Pontiac engines as Buick engines is in fact somewhat deceptive.
The record also reveals an advertisement for the Cadillac Seville which proudly declares: "Seville is so well engineered that a number of its design concepts have been incorporated in the 1977 Cadillacs * * * the cars we proudly label the next *842 generation of the luxury car. Seville is also a car of innovation —incorporating many of the latest American advancements. Such as its 5.7 Litre Electronic Fuel Injected engine with an on board analog computer.” Undoubtedly anyone purchasing a Cadillac Seville on the basis of such an advertisement must have been rather surprised to learn that in fact this extraordinary engine was manufactured by Oldsmobile.
The advertisements described above are illustrative only, and the record abounds with many similar examples. In light of this especially strong record, I firmly agree with the courts below that General Motors did indeed engage in deceptive advertising, as a matter of law, with respect to the engines used in its automobiles. While automobile buffs may have known enough to carefully inquire into the origin of the motor before purchasing a General Motors car, I think the average consumer would have been justified in believing that his 1977 Oldsmobile contained an Oldsmobile engine, rather than a Buick engine, after being repeatedly assured that General Motors had built an Oldsmobile just for him. Hence, I would affirm the order appealed from insofar as it provides purely injunctive relief on the basis of the finding that General Motors engaged in conduct proscribed by subdivision 12 of section 63 of the Executive Law.
I would remit the matter to Supreme Court, however, for further proceedings designed to establish a factual foundation for any restitution to be provided defrauded consumers. The record as it now stands provides no support for the determination made by Supreme Court that an extended warranty and a $200 cash rebate constitute appropriate restitution to consumers who unwittingly purchased automobiles with switched engines. It is true, of course, that a court has considerable discretion in determining the proper means and extent of restitution in a proceeding of this type (see State of New York v Princess Prestige Co., 42 NY2d 104, 108). This is so because the injuries sustained by a defrauded consumer are often not readily susceptible of precise quantification, and yet some measure of damages must be devised. Nonetheless, there must exist some articulable rationale for establishing a particular measure of restitution. Subdivision 12 of section 63 does not authorize the imposition of fines as a means of penalizing fraudulent conduct, but instead speaks in terms of restitution for actual injuries. In the instant case, for example, it might be appropriate to determine restitution based in part on any *843 decrease in the resale value of an automobile with a switched engine. Similarly, inquiry could be made into the price differences, for example, between a Cadillac Seville with an Oldsmobile engine and an Oldsmobile with extensive accessories. This is not to imply, of course, that restitution should be computed on an individual basis, for we are dealing with a broad remedial statute. Nonetheless, an award of restitution must be grounded upon more than is found within the record as it now reads.
Accordingly, I vote to remit this matter for further proceedings in accord with this opinion.
Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur; Judge Gabrielli dissents in part and votes to modify in a separate opinion in which Chief Judge Cooke concurs.
Order reversed, with costs, proceeding dismissed as to claim with respect to the Cadillac Seville and the proceeding as to the remainder of the claims asserted remitted to Supreme Court, New York County, for a hearing in accordance with the memorandum herein.

 It is claimed that the present proceeding is barred by the doctrine of res judicata because of a prior proceeding brought in April, 1977 against General Motors which resulted in a consent judgment against General Motors. However, that proceeding was limited to the fraudulent practice of using Chevrolet engines in Buick, Oldsmobile and Pontiac automobiles. When the consent judgment became public knowledge, the Attorney-General received hundreds of complaints aimed at the practice of using Buick, Oldsmobile and Pontiac motors interchangeably in each other’s cars, and the use of those engines in Cadillac Sevilles. General Motors’ practices and the claimed fraudulent acts in each of these proceedings were different from the other. Hence, res judicata is not applicable.